UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SHERYL HANSEN and ROGER HANSEN,  Plaintiffs,  vs.  MICHAEL SHIELDS and AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,  Defendants. | CIV. 18-5041-JLV  ORDER |

## INTRODUCTION

Plaintiffs Sheryl Hansen and Roger Hansen filed a complaint against Defendant Michael Shields asserting a bystander's negligent infliction of emotional distress claim for Mrs. Hansen and a loss of consortium claim for Mr. Hansen.  (Docket 1).  Plaintiffs assert an underinsured motorist claim against Defendant American National Property and Casualty Company ("ANPAC").  Id.  The defendants' answers deny plaintiffs' claims.  (Dockets 6 & 7).

ANPAC filed a motion for summary judgment together with a legal memorandum, a statement of undisputed material facts and one exhibit. (Dockets 24-26 & 27-1).  Plaintiffs filed a legal memorandum in resistance to ANPAC's motion.  (Docket 28).  ANPAC filed a reply brief.  (Docket 29). Mr. Shields filed a notice of joinder in ANPAC's motion for summary judgment.  (Docket 30).  Mr. Shields subsequently filed a separate motion

for summary judgment together with a legal memorandum, a statement of undisputed material facts and one exhibit. (Dockets 31-34 & 34-1).[1] Plaintiffs filed a response to Mr. Shields' motion, a legal memorandum in resistance to his motion and a response to Mr. Shields' statement of undisputed material facts. (Dockets 36-38). For the reasons stated below, defendants' motions for summary judgment are denied.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

---

[1] Because Mr. Shields' statement of undisputed material facts is essentially the same as those presented by ANPAC, the court will only reference ANPAC's statement of facts except where specifically indicated.

2

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at pp. 251-52.

## FACTUAL SUMMARY

The following recitation consists of the material facts developed from plaintiffs' complaint (Docket 1), both defendants' answers (Dockets 6 & 7), defendants' statement of undisputed material facts (Dockets 25 & 33), plaintiffs' response to ANPAC's statement of undisputed material facts (Docket

3

28 at pp. 2-4), and plaintiffs' response to Mr. Shields' statement of undisputed material facts. (Docket 37). Where a statement of fact is admitted by the opposing party, the court will only reference the initiating document. These facts are "viewed in the light most favorable to [plaintiffs, who are] opposing the motion[s]." Matsushita Elec. Indus. Co., 475 U.S. at 587. The facts material to defendants' motions for summary judgment are as follows.

Sheryl Hansen and Roger Hansen are married and are residents of the state of Iowa. (Docket 1 ¶ 1). Michael Shields is a resident of the state of Minnesota. Id. ¶ 2. ANPAC is a resident of and its principal place of business is in the state of Missouri. Id. ¶ 3.

In July 2015, Sheryl and Roger Hansen were traveling in South Dakota with Steve Keithley and his wife Patty. (Docket 25 ¶¶ 1 & 3). Sheryl Hansen and Steve Keithley are adult siblings. Id. ¶ 2. Sheryl was driving a motorcycle support vehicle, a Dodge Durango, with Patty as her passenger while Steve and Roger were riding their motorcycles in front of the Durango on Highway 385. Id. ¶ 3.

Prior to the accident which is the subject of this litigation, Steve was riding his motorcycle in the outside of the lane and in front of Roger. Id. ¶ 7. Roger was riding his motorcycle behind Steve and in front of the Durango.[2] Id.

---

[2]The motorcycles were traveling in a traditional spacing method with Steve's motorcycle in the right hand portion of the lane and Roger's motorcycle in the left hand portion of the lane closer to the center line. (Docket 27-1 at p. 4) (p. 16:4-15).

4

¶ 8.  Sheryl was always traveling a safe distance behind Steve and Roger.  Id.

¶ 10.  Sheryl was driving the Durango at about 40 miles per hour, approximately one car length behind Roger's motorcycle.  (Docket 27-1 at p. 5) (p. 17:2-18).[3]  She was maintaining a consistent distance behind Roger.  Id. (p. 18:6-8).  Sheryl's Durango was just 16 to 20 feet behind Steve's motorcycle at the time of the accident.  (Docket 28 at p. 3 ¶ 10).

Steve was involved in an accident with Mr. Shields' motorcycle.  Id. ¶ 4.  According to Sheryl, the Shields' motorcycle "came out of nowhere . . . I just all of a sudden see [sic] this motorcycle pull out in front of my brother and he goes flying up in the air."  (Docket 27-1 at p. 5) (p. 19:2 & 19:16-18).  Sheryl "immediately was putting on the brakes at the same time.  And the next thing, I look and he's hit the ground.  He hit the ground head first and just started rolling across the highway."  Id. (p. 19:20-23).  Steve was injured, transported to the Deadwood, South Dakota, hospital and ultimately transferred to the hospital in Rapid City, South Dakota.  (Docket 25 ¶ 5).

Sheryl contemporaneously observed the incident which caused Steve's injuries.  (Docket 28 at p. 3 ¶ 10).  At no time did Sheryl think she and her vehicle were going to be in the accident.  (Docket 25 ¶ 11).  Sheryl did not receive medical attention following the accident as she was not physically injured.  (Docket 33 ¶ 11).

---

[3]Because Sheryl's deposition is filed in CM/ECF with four pages of the transcript on a page, the court refers to the deposition as it appears in CM/ECF and then to the specific page of the transcript.

## DISCUSSION

**A.     Applicable Law**

In diversity actions, the court applies the substantive law of the forum state.  See Jordan v. NUCOR Corp., 295 F.3d 828, 834 (8th Cir. 2002). "[F]ederal courts sitting in diversity cases, when deciding questions of 'substantive' law, are bound by state court decisions as well as state statutes." Hanna v. Plumer, 380 U.S. 460, 465 (1965) (referencing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).   See also In re Baycol Products Litigation, 616 F.3d 778, 785 (8th Cir. 2010) ("in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.") (internal citations omitted).   In this case, the forum state is South Dakota, so the court will apply South Dakota law.  O'Neal v. Remington Arms Co., LLC, 817 F.3d 1055, 1060 (8th Cir. 2015).

**B.     Bystander's Negligent Infliction of Emotional Distress Claim**

"South Dakota law recognizes a bystander's claim for negligent infliction of emotional distress[.]"  Nielson v. AT & T Corp., 597 N.W.2d 434, 442 (S.D. 1999).   To be successful, the court ruled a plaintiff's bystander claim must be

> caused by contemporaneous observation of the serious injury or death of a third party with whom the bystander has a close relationship.  The bystander must be within the zone of danger. However, the emotional distress suffered may be caused by fear for the third person and need not be caused by the bystander's fear for his or her own safety. The negligently inflicted emotional distress must be accompanied with physical manifestations.

Id.

6

ANPAC's summary judgment motion asserts Mrs. Hansen's bystander claim must be dismissed because she "was not in the zone of danger of the accident."[4] (Docket 26 at p. 1). Because Mrs. Hansen testified she did not feel her vehicle was going to be involved in the accident, ANPAC submits "she was not in the zone of danger." Id. at p. 4. ANPAC contends this "is true because the accident occurred two vehicles in front of her and because she was 'traveling at a safe distance' behind her brother and husband." Id. (referencing Docket 27-1 at p. 5) (p. 17:9-11). Mr. Shields joins ANPAC's argument asserting that under Nielson, Sheryl's "safety must have been jeopardized." (Docket 32 at p. 3).

Plaintiffs oppose defendants' motions. (Dockets 28 & 38).[5] They assert Mrs. Hansen's bystander claim should be allowed to proceed because "the zone of danger element in South Dakota merely requires that a plaintiff contemporaneously observe the injury causing incident while at or near the scene." (Docket 28 at p. 7) (referencing Nielson, 597 N.W.2d at 440-42). Plaintiffs submit "it is undisputed that Mrs. [Hansen] was just sixteen to twenty feet behind her brother . . . . In comparison to the plaintiff in Nielson, Mrs. Hansen witnessed the injury causing event at a much closer distance—

---

[4]Because Mr. Shields' legal memorandum makes essentially the same arguments as ANPAC, the court will only reference ANPAC's argument except where specifically indicated.

[5]Because plaintiffs' arguments in opposition to both defendants' motions for summary judgment are the same, the court will only reference plaintiffs' response to ANPAC's argument except where specifically indicated.

thirty to thirty-four feet closer." Id. at p. 9 (comparing Nielson, 597 N.W.2d at 436, with Docket 27-1 at p. 5 (pp. 17:15-18:1 and 19:7-25)). "[B]ecause Mrs. [Hansen] was, as a matter of law, within the zone of danger—contemporaneously observing the injury causing event from the scene and at a closer distance than the Plaintiff in Nielson[,]" plaintiffs conclude defendants "remain[] ineligible for judgment as a matter of law." Id.

In rebuttal, ANPAC argues plaintiffs "fail to realize that the South Dakota Supreme Court, in surveying innocent bystander's claims in neighboring states, created its own hybrid test where it requires both 'contemporaneous observation of the serious injury' and that 'the bystander must be within the zone of danger.' " (Docket 29 at p. 2 n.1) (citing Nielson, 597 N.W.2d at 442). ANPAC submits "[t]he rationale for the zone of danger test requires that an innocent bystander plaintiff have had her safety endangered by her placement in 'immediate risk of physical harm.' " Id. at p. 2 (citing Nielson, 597 N.W.2d at 441) (quoting Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 548 (1994)). Because Mrs. Hansen testified "no" when "asked if she thought she was going to be in the same accident as her brother," ANPAC asserts she "was not in the zone of danger, or at an immediate risk of physical harm by [Mr.] Shield's conduct, because she was always 'traveling at a safe distance' behind her brother and husband." Id. (citing Docket 27-1 at p. 5) (p. 17:9-11). ANPAC argues "[t]here is no better evidence than that." Id. at p. 3.

8

Mr. Shields reviewed the cases considered by the South Dakota Supreme Court to develop the zone of danger tests of Nielson.  Based on his analysis, Mr. Shields argues Sheryl "was not at risk of physical harm by [his] conduct," therefore "she cannot sustain a claim for negligent infliction of emotional distress."  (Docket 32 at p. 8).  Mr. Shields submits "[t]he defining characteristic of the zone of danger test is the threat of physical injury to the plaintiff."  (Docket 39 at p. 6).

Nielson was "a case of first impression in South Dakota."  597 N.W.2d at 440.  For that reason, a brief review of the facts of the case is important.  Mrs. Nielson and her 19-year-old daughter Karyn, were horseback riding together. "During a controlled gallop, Karyn's horse tripped and somersaulted landing on Karyn."  Id. at 436-37.  Mrs. Nielson "was riding approximately 50 feet behind Karyn."  Id. at 437.  Mrs. Nielsen attempted to give CPR and accompanied her daughter to the hospital.  Id.  Karyn later died from her injuries.  Id.

In deciding to apply a zone of danger element to a bystander's claim, the Nielson court reviewed other court rulings which adopted a zone of danger test. "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct."  Id. at 441 (citing Consolidated Rail Corp., 512 U.S. at 547-48).  "The rationale for this test is that the defendant breached a duty to the bystander by endangering her safety and placing her in the zone of danger."  Id.  The Nielsen court

9

considered the zone of danger standard applied in Missouri, that is, "that plaintiff was . . . placed in a reasonable fear of physical injury to his or her own person."  Id. (citing Asaro v. Cardinal Glennon Memorial Hospital, 799 S.W.2d 595, 599-600 (Mo. 1990)).  Based on its analysis, the South Dakota Supreme Court developed the standard set forth on page seven of this order.  Id. at 442. Mrs. Nielsen's bystander claim survived summary judgment.  Id.

The South Dakota Supreme Court declined to provide any further guidance on how courts were to interpret and apply the zone of danger test. "This holding is sufficient for the facts of this case.  We leave all collateral questions for the development of the law on a case by case basis, or, the legislature, if they should so choose."  Id. at 442 n.3.

In the context of a bystander claim, the South Dakota Supreme Court has not had an occasion to focus on the zone of danger standard since Nielson.[6]  Only two federal cases in the District of South Dakota have addressed the issue.

In Christensen v. Nelson, No. CIV 08-4122, 2010 WL 562883 (D.S.D. Feb. 17, 2010), District Judge Lawrence L. Piersol concluded as a matter of law a bystander's claim could not go to trial because the plaintiff mother "was not present when the alleged negligent act of causing [her minor son] to be in the

---

[6]Plaintiffs ask the court, if it is inclined to "entertain the [d]efendants' [m]otions for [s]ummary [j]udgment" to "consider certifying the . . . question to the Supreme Court of South Dakota[.]"  (Docket 38 at p. 10).  Based on the analysis in this order, the court declines plaintiffs' invitation.

dust-filled attic occurred." Id., 2010 WL 562883, at *9.  The court ruled "[w]itnessing his death five days after [he] was in the attic is too far removed to satisfy South Dakota's zone of danger requirement."  Id.

In the second case, Judge Piersol ruled parents who "did not contemporaneously observe [their son's] suicide and . . . were not in the zone of danger[,]" could not as a matter of law proceed to trial on their bystanders' emotional distress claims.  Schilf v. Eli Lilly & Co., No. CIV 07-4015, 2010 WL 3909909, at *2 (D.S.D. Sept. 30, 2010) (referencing Nielson, 597 N.W.2d at 434).

Going 40 miles per hour and being only one or two car lengths behind her brother's motorcycle at the moment Mr. Shields' motorcycle suddenly pulled onto the highway placed Mrs. Hansen in the immediate proximity of the collision of the two motorcycles.  But for her defensive driving response, Mrs. Hansen's vehicle would have been drawn into the collision.

Mrs. Hansen contemporaneously observed the collision causing serious injury to her brother.  Nielson, 597 N.W.2d 442.  Her allegation of emotional distress is based on her fear that her brother may suffer potentially serious injuries or death and was not caused by any "fear for . . . her own safety."  Id.  Without minimizing Mrs. Nielson's emotional experience with her daughter's

11

horse riding accident, Mrs. Hansen was in even closer proximity to her brother's collision.[7]

The court finds as a matter of law Mrs. Hansen cannot be excluded from the zone of danger standard endorsed by the South Dakota Supreme Court in Nielson. Whether Mrs. Hansen was actually "within the zone of danger is a jury question." Carpenter v. City of Belle Fourche, 609 N.W.2d 751, 759 (S.D. 2000).

Defendants' motions for summary judgment as to Mrs. Hansen's bystander claim are denied.

**C.    Loss of Consortium Claim**

Defendants' motions for summary judgment argue Mrs. Hansen's bystander claim must be dismissed so it follows that Mr. Hansen's loss of consortium claim cannot survive. (Dockets 26 at p. 4 & 32 at p. 12) (referencing Selchert v. Lien, 371 N.W.2d 791, 794 (S.D. 1985)).

"Although interspousal consortium is a personal right, . . . a cause of action for the loss of spousal consortium is derivative in nature." Selchert, 371 N.W.2d at 794. "[I]ts validity depends upon the validity of the main cause of action." Id. Because Mrs. Hansen's bystander claim will proceed to trial, Mr. Hansen's loss of consortium claim is likewise entitled to proceed.

---

[7]Defendants' motions for summary judgment do not challenge Mrs. Hansen's claim that her emotional distress was accompanied by physical manifestations. Nielson, 597 N.W.2d at 442. From plaintiffs' complaint, it appears that element of Mrs. Hansen's bystander claim remains a jury question. See Docket 1 ¶¶ 11-13.

12

Defendants' motions for summary judgment as to Mr. Hansen's claim are denied.

**ORDER**

Based on the above analysis, it is

ORDERED that defendants' motions for summary judgment (Dockets 24 & 31) are denied.

IT IS FURTHER ORDERED that the parties shall within 30 days of this order advise the court if the parties intend to engage in mediation to resolve plaintiffs' claims or advise the court what additional preparations, if any, are required before the case is placed on the trial calendar.

Dated July 29, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

13